**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RODNEY K.,[1] | : | Case No. 2:25-cv-869 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

Plaintiff Rodney K. brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #7).

## I. <u>Background</u>

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469–70.

In the present case, Plaintiff applied for benefits on July 28, 2020, alleging disability due to shoulder problems, arm problems, spine problems, numbness in legs, back pain, swollen knee, carpel tunnel in right hand, depression, and anxiety. (Doc. #7–6, *PageID* #431). After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Jessica Hodgson. (Doc. #7–2, *PageID* #s 79–121). On April 20, 2022, ALJ Hodgson concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. *Id.* at 50–78.

After the Appeals Council denied review, Plaintiff filed a previous case in the United States District Court for the Southern District of Ohio. This Court remanded the case to the Commissioner. *See [Rodney K.] v. Comm'r of Soc. Sec.*, No. 2:23-cv-00653 (S.D. Ohio March 18, 2024); (Doc. #7–11 *PageID* #s 1622–39). Upon remand, the case was assigned to ALJ Jason P. Tepley, who held two hearings on March 13, 2025, and May 12, 2025, (Doc. #7–10, *PageID* #s 1525–51, 1552–84), and issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since July 26, 2020, the alleged disability onset date.

Step 2: He has the following severe impairments: right shoulder degenerative joint disease status post surgical repair; left shoulder rotator cuff surgical repair; bilateral knee degenerative joint disease; cervical spine degenerative disc

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

disease status post fusion surgery; lumbar degenerative disc disease, status post laminectomy; obesity; left ankle degenerative joint disease; left carpal tunnel syndrome, slams post release; tennis elbow and osteoarthritis status post debridement: chronic gout; major depressive disorder; posttraumatic stress disorder ("PTSD"); borderline intellectual functioning ("BIF"); anxiety disorder; and insomnia.

Step 3: He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the ability to perform "sedentary work … except occasionally push/pull or operate hand controls with the bilateral upper extremities; occasionally balance (as defined in the SCO), stoop, kneel, crouch, crawl, or climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally overhead reach and frequently do front and lateral reaching with the bilateral upper extremities; frequently handle, finger, or feel with the bilateral upper extremities; no work in high, exposed places or in proximity to moving mechanical parts; no driving or operating of machines or equipment; can understand, remember, carry out simple instructions; make simple work-related decisions; frequent interaction with supervisors and coworkers; occasional interaction with the general public; can perform work without a specific production rate pace (such as assembly line or hour production quota work); and can deal with occasional changes in a routine work setting."

Plaintiff is unable to perform his past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and residual functional capacity, the vocational expert testified that there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. #7–10, *PageID* #s 1497–1514). Based on these findings, the ALJ concluded that Plaintiff has not been disabled since July 26, 2020. *Id.* at 1514.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7–10, *PageID* #s 1491–1524), Plaintiff's Statement of Errors (Doc. #9), the Commissioner's

Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

Plaintiff first contends that the ALJ erred by neglecting to evaluate the opinion of treating occupational therapist Blair Taylor pursuant to 20 C.F.R. § 404.1520c. (Doc. #9, *PageID* #s 3087–

93; Doc. #11, *PageID* #s 3118–23). Plaintiff also contends that despite this Court's clear instructions to properly evaluate Plaintiff's subjective complaints and symptoms, the ALJ again failed to do so. *Id.* at 3093–96, 3123–24.

The Commissioner counters that the ALJ complied with the relevant regulations when he considered both the supportability and consistency of Ms. Taylor's opinion in finding it unpersuasive. (Doc. #10, *PageID* #s 3101–11). The Commissioner also argues that the ALJ properly considered Plaintiff's subjective complaints and symptoms and did not rely on the activities alone, but considered them as one factor, in finding that Plaintiff's subjective complaints were not entirely consistent with the record. Further, the ALJ did not attempt to relate Plaintiff's activities to a specific degree of functional ability but instead evaluated them to show inconsistency with the alleged symptoms and limitations. *Id.* at 3111–15.

### A. The ALJ's Evaluation of Treating Occupational Therapist Blair Taylor

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the

following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors. 20 C.F.R. § 404.1520c(b)(2). While the regulations state that ALJs "*may* . . . explain how [they] considered" the other various factors, these same regulations mandate that an ALJ "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Supportability "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Kenneth M. v. Comm'r of Soc. Sec.*, 2025 WL 1948987, at *12 (S.D. Ohio July 16, 2025) (Preston Deavers, M.J.), quoting *Reuse v. Comm'r of Soc. Sec.*, 2021 WL 1697919, at *7 (N.D. Ohio Apr. 29, 2021) (internal citations omitted). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). Failing to discuss either supportability or consistency requires remand. *Kenneth M.*, 2025 WL 1948987, at *12; *Whalen v. Comm'r of Soc.*

*Sec.*, 2025 WL 1452713, at *17 (N.D. Ohio May 21, 2025), *report and recommendation adopted*, No. 1:24-CV-1928, 2025 WL 1756524 (N.D. Ohio June 25, 2025) ("An ALJ may discuss one adequately but not the other, thus requiring remand.").

An ALJ must "provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021), and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)) ; *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *5 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Warren I.*, 2021 WL 860506, at *8. The ALJ bears the burden of "show[ing] his or her work"; in other words, the ALJ must "explain in detail *how the factors actually were applied* in each case, to each medical source." *Kenneth M.*, 2025 WL 1948987, at *12 (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp. 3d 900, at *6 (E.D. Mich. 2021)); *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 1009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (internal citations omitted).

In the instant case, Plaintiff underwent a Functional Capacity Evaluation (FCE) in September 2021 with Occupational Therapist Blair Taylor. (Doc. #7-9, *PageID* #s 1484–89).

After examining Plaintiff, Ms. Taylor reported that Plaintiff's physical demand level was light and he was able to tolerate occasional work within parameters of the FCE but was largely unable to complete repetitive work or consistent functional movements. *Id.* at 1488. She concluded that Plaintiff could lift fifteen pounds occasionally and no weight frequently and must avoid walking, climbing, kneeling, crawling, and stooping/bending. *Id.* at 1486–88. The ALJ considered Ms. Taylor's findings when determining Plaintiff's RFC, ultimately concluding that Ms. Taylor's opinions were "not persuasive." (Doc. #7–10, *PageID* #1510). The ALJ determined that, while Ms. Taylor supported her findings with her evaluation, the opined limitations were inconsistent with the overall evidence in the record, including objective findings, physical examination results, and treatment records. *Id.* The ALJ further explained:

> The treatment records from after [Plaintiff's] lumbar spine surgery at the end of July 2021 (right before this evaluation was done in September 2021), do not note or suggest the claimant was limited to the extent the OT evaluation opinions suggest (Ex. 10F; 11F; 12F; 15F). This appears to be a one-time evaluation with no indication or explanation of a follow up plan or ongoing therapy. The treatment records for the period since the claimant was discharged after his lumbar surgery in July 2021, do not indicate a decline in his abilities, but instead note a few emergency room follow-up appointments with generally unremarkable physical exam findings and imaging showing degenerative changes in his bilateral knees from December 2021 (Ex. 11 F; 12F), Further, the most recent records from a physical therapy evaluation and follow up sessions note that while he exhibited decreased strength in the lower extremity, he was showing progress and improvement as of February 17, 2022, when compliant with the plan for therapy for his knees and low back (Ex. 14F). Overall, the level of limitation in the OT evaluation opinions is not consistent with the progress notes and physical exam findings in contemporaneous and subsequent treatment records (Ex, 10F; 11F; l2F: 14F). Further, there is no indication in records after July 2021 that there were any post-operative complications.

*Id.*

Plaintiff argues, in part, that the ALJ failed to consider highly relevant evidence when engaging in the supportability analysis. (Doc. #9, *PageID* #3089). Plaintiff cites Ms. Taylor's findings that Plaintiff could only sit for 22 minutes, stand for seven minutes, and walk for two minutes in a single duration; Plaintiff's reports of only being able to sit and stand for a few minutes at a time, which "was observed by OT Taylor"; Plaintiff's reports that, while he can perform the majority of his daily living activities independently, "he goes slow and takes his time"; Plaintiff's reports that he was easily fatigued and needed to pace himself and take frequent rest breaks; Ms. Taylor's observations and Plaintiff's reports that he struggled to perform "all functional motions," such as standing in one place or walking more than one to two minutes at one time; results from Plaintiff's musculoskeletal examination, which noted widespread pain, limited strength, numbness, tingling, and weakness; Plaintiff's slow gait; Plaintiff's inability to walk on a level surface; Plaintiff's "difficulty with prolonged standing"; and Ms. Taylor's finding that her assessment was reliable and consistent with Plaintiff's performance during the examination. (Doc. #9, *PageID* #3089).

As a threshold issue, an ALJ is not required to discuss all evidence or every observation, particularly where the evidence at issue is considered implicitly. *See Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022) (citing *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 452–53 (6th Cir. Dec. 8, 1999); *Dunlap v. Comm'r of Soc. Sec.*., 509 F. App'x 472, 476 (6th Cir. 2012)). Here, while the ALJ may not have expressly listed the above evidence, he did cite to the occupational evaluation and discussed Plaintiff's limitations with regard to physical work, including repetitive or consistent movements, lifting, and postural

activities—which includes dynamic balancing and walking. (Doc. #7-10, *PageID* #1510). That ALJ does, however, contemplate Plaintiff's slow gait (*id.* at 1506, 1508, 1512), Plaintiff's need for frequent breaks while performing activities of daily life (*id.* at 1502), and Plaintiff's need to lay down throughout the day (*id.*). It is clear from the ALJ's opinion that the evidence at issue was adequately considered in compliance with the regulations. *See Robinson*, 2022 WL 17168444, at *2 (citing 20 C.F.R. § 404.1520(e); *Amir v. Comm'r Soc. Sec.*, 705 F. App'x 443, 450 (6th Cir. 2017)).

Plaintiff next argues that the ALJ erred in his consistency analysis by characterizing Plaintiff as having progressed or showed improvements in physical therapy. (Doc. #9, *PageID* #3090). However, there is evidence in the record, which the ALJ cites to, that indicates progress or improvement with treatment. For example, in February 2021, Plaintiff was admitted for inpatient treatment at the emergency department due to lower back pain; he was later "discharged in good condition, was progressing back to baseline, and with independent ambulation." (Doc. #7-10, *PageID* # 1503–04). In July 2021, Plaintiff underwent a laminectomy L3-S1, and after the procedure, "he reported reduction of his right lower extremity pain and cessation of his right lower extremity numbness." *Id.* at 1504. In February 2022, Plaintiff reported to physical therapy on referral, and the records noted that Plaintiff "continued to progress with strengthening exercises and able to perform increased reps with all[ ] exercises without increase in pain." *Id.* In August 2022, Plaintiff underwent a left tennis elbow debridement and carpal tunnel release, and follow-up notes showed "full range of motion of the wrist without pain and that he was doing well with resolved/improving numbness." *Id.* In January 2024, following a left shoulder arthroscopic repair,

Plaintiff reported "[h]e was progressing well aside from some residual numbness related to his sling" and that "[h]e was doing great overall." *Id.* at 1506.

The undersigned finds that the ALJ adequately discussed supportability and consistency in his treatment of Ms. Taylor's opinion, and his further engagement with their opinions in light of the evidence in the record satisfied the articulation requirements of § 404.1520c. Furthermore, as outlined above, substantial evidence supports the ALJ's reasons for finding her opinion unpersuasive. While there may be evidence in the record that supports a more limited RFC "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 422 (6th Cir. 2008) (The Court "'may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.'") (quoting *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff also contends that the ALJ erred by not discussing his diagnosis for centralized sensitization to pain.[3] "But a diagnosis alone is not enough for proving disability." *Boggs v. Comm'r of Soc. Sec*., No. 2:20-cv-6135, 2021 WL 4771267, at *22 (S.D. Ohio October 13, 2021) (Jolson, M.J.) (citing *Lee v. Comm'r of Soc. Sec*., 529 F. App'x 706, 713 (6th Cir. 2013) ("The mere diagnosis of [an impairment] ... says nothing about the severity of the condition.")). Further, as discussed above, an ALJ is not required to list every piece of evidence. *Robinson v*, 2022 WL 17168444, at *2. In this case, the ALJ extensively engages with Plaintiff's pain symptoms

[3] Notably, Plaintiff refers to this as "central pain syndrome," (Doc. #9, *PageID* #3093); (Doc. #11, *PageID* #3119), but there no indication that centralized sensitization to pain and central pain syndrome are synonymous.

throughout his decision, and more specifically, in formulating the RFC. (Doc. #7-10, *PageID* #s 1501–05).

Therefore, Plaintiff's first assignment of error is not well taken.

**B. Statements Concerning Intensity, Persistence, and Limiting Effects**

Plaintiff next argues that the ALJ's symptom evaluation is not consistent with the evidence of record. (Doc. #9, *PageID* #s 3093–96). Plaintiff argues that the ALJ's symptom evaluation did not comply with this Court's previous remand order because it is premised on "material mistruths and mischaracterizations of the record." *Id.* at 3094.

In assessing a claimant's subjective symptoms, the ALJ must engage in a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms ... and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *9; *see also* 20 C.F.R. § 404.1529. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *9. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms;

statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

When evaluating the intensity, persistence, and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id.*

Furthermore, Social Security Ruling 16-3p requires the ALJ's decision to "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in [the] record and how [his] evaluation of the individual's symptoms led to [his] conclusions." Soc. Sec. R. 16-3p, 2017 WL 5180304, *8. Additionally, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be *clearly articulated* so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* (emphasis added).

***Subjective Complaints***

Plaintiff testified during the November 2021 administrative hearing that he required frequent breaks in between chores due to pain. (Doc. # 7–2, *PageID* #s 98–99). He could not perform "a sit-down job" on a sustained, full-time basis. *Id.* at 102. He could not remain sitting for more than a few minutes before needing to stand up or reposition due to severe pain. *Id.* at 103. He spent fifty to sixty percent of the day lying down to manage his pain. *Id.* at 94, 100. During the March 15, 2025 hearing, Plaintiff testified that he took frequent breaks in between chores. (Doc. #7–10, *PageID* # 1563). He frequently repositioned and shifted around in his seat while sitting due to discomfort. *Id.* at 1569. He did this all throughout the day. *Id.* at 1575. He testified that he believed he could work if he had a job that permitted him to "take breaks every two or three minutes[.]" *Id.* at 1576.

In the prior Court decision, the case was remanded because "the ALJ's rejection of Plaintiff's self-described limitations was again premised on 'material mistruths and mischaracterizations of the record.'" *See Rodney K.*, No. 2:23-CV-00653, 2024 WL 1152510, at *4. In the current administrative decision, the ALJ found that Plaintiff's self-described limitations were inconsistent with the record. (Doc. #7–10, *PageID* #1502). The ALJ determined that:

> Overall, while the record is supportive of several physical impairments, with the claimant undergoing multiple surgeries, records establish significant improvement with each of these procedures. Follow-up notes consistently indicate that he was doing well with improvement. And, as noted above, exams even before his lumbar surgery reflect findings indicative of the ability to at least perform sedentary work with exams after that time showing some symptoms, including slowed gait at times, but no indication of inability to perform sedentary work. This is also consistent with his ability to perform some household chores, walk to the bus stop, sit on a bus, and go visit his brother or grocery shop during the day. The record does not include supportive objective evidence of the severe right sided reaching or hand impairment

> he alleged during the hearing or of the severe issues with standing/walking alleged. Overall, there is not a 12-month period in which the claimant experienced debilitating impairment, as records show fairly quick recoveries after his procedures with significant improvement following each.

*Id.* at 1506.

As discussed in the above section, the ALJ's findings are supported by substantial evidence. "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Brown v. Comm'r of Soc. Sec*., No. 1:25-CV-2094, 2026 WL 2291226, *33 (N.D. Ohio Aug. 10, 2026) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) and *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938)). Substantial evidence is not a high bar. *Biestek*, 587 U.S. at 102. "While it requires 'more than a mere scintilla,' '[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Brown*, 2026 WL 2291226, *33 (quoting *Consolidated Edison*, 305 U.S. at 229). Here, there is enough evidence in the record—listed in the above section—for a reasonable mind to find support for the ALJ's determination. *Id.* Further, the ALJ has engaged with the very pieces of evidence that Plaintiff takes issue with, discussing Plaintiff's need for rest breaks while conducting daily activities and Plaintiff's need to lie down throughout the day. Finally, "[a] plaintiff does not demonstrate a violation of SSR 16-3p, 2016 SSR LEXIS 4 simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ…." *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints"). It is the ALJ, not the undersigned, who must "judge the consistency of

[Plaintiff's] statements," *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020), by making determinations that are "reasonable and supported by the substantial evidence." *Rogers*, 486 F.3d at 249. Here, the ALJ discussed the consistency of Plaintiff's subjective complaints, found them inconsistent with the evidence in the record, and adequately "buil[t] an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011), such that the undersigned can adequately trace the ALJ's reasoning. Accordingly, the undersigned finds Plaintiff's assignment of error unpersuasive.

***Vocational Expert Testimony***

Additionally, Plaintiff asserts the ALJ failed to consider the vocational expert (VE) testimony that Plaintiff's need to "take breaks every two to three minutes" would be work preclusive. (Doc. #9, *PageID* #3095). Hypothetical limitations posed to the VE do not bind the ALJ to include those limitations in the RFC. *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) ("Indeed, the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations. That does not mean that the VE's answer about the *hypothetical individual* binds the ALJ.") (internal citation omitted); *see also Beckham v. Comm'r of Soc. Sec.*, No. 1:19–CV–576, 2020 WL 5035451, at *9 (S.D. Ohio Aug. 26, 2020) (Litkovitz, M.J.) ("Simply posing a hypothetical question to the [vocational expert] does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations."). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye*, 802 F. App'x at 170 (citing

*Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). As discussed above, the ALJ found Ms. Taylor's findings, including her opined limitations as to postural activities, such as walking and dynamic balance, unpersuasive as they were inconsistent with the evidence in the record. Therefore, the ALJ did not err by declining to incorporate the VE's answer to those corresponding hypothetical limitations. *See Lipanye*, 802 F. App'x at 170 (referencing *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) ("[T]he ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations."). Further, so long as the ALJ's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)); *see Beavers v. Sec'y. of Health, Educ. and Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978). Here, the undersigned finds that the ALJ's decision is supported by substantial evidence. (*See* Doc. #7-10, *PageID* #1506).

***Mental Impairments***

Finally, Plaintiff argues that "the ALJ was wrong to conclude that the record was 'suggestive of normal concentration and ability to perform simple instructions.'" (Doc. #9, *PageID* #3095). The Commissioner contends that the ALJ included additional limitations regarding production pace work, while also pointing out the mostly normal mental examination findings in the treatment record and at the consultative mental examination. (Doc. #10, *PageID* #s 3113–14)

(citing Doc. #7-7, *PageID* #s 600–601, 616–617, 830, 834, 838; Doc. #7-9, *PageID* #1226; Doc. #7-10, *PageID* #1509, 1511; Doc. #7-15, *PageID* #2123, 2147, 2160, 2171–2172).

As to his mental impairments, during the March 15, 2025 hearing, Plaintiff testified that he "can't stand being around a lot of people, my anxiety gets too high." (Doc. #7-10, *PageID* # 1572). He also testified to having depression and struggling to concentrate. *Id.* at 1573. Plaintiff contends that his testimony is consistent with the examination findings and conclusions of the psychological consultative examiner Hunter Hahn, Ph.D., who noted Plaintiff had "significant limitations in sustaining concentration due to mental health symptoms." (Doc. #9, *PageID* # 3095) (citing Doc. #7-18, *PageID* #2959). Dr. Hahn concluded that Plaintiff's prognosis was poor because he demonstrated "minimal symptom improvement despite a well–documented history of many medication trials." *Id.* at 2960. The ALJ found Dr. Hahn's opinion to be not persuasive, noting that Dr. Hahn utilizes non-vocational terminology such as "significant limitation" and "mild difficulty"—limiting the opinion's value in formulating the RFC. (Doc. #7-10, *PageID* # 1512). The ALJ further found that the implication of the word "significant," although not vocationally defined and while supported by Dr. Hahn's own findings, including need for redirection on examination, does not appear consistent with the overall record. *Id.*

Plaintiff also refers to the findings of Ryan Wagner, Psy.D., from his psychological examination on December 8, 2020. (Doc. #9, *PageID* #3095) (citing Doc. #7-7, *PageID* #s 599–602). Dr. Wagner concluded that Plaintiff's performance on a brief verbal reasoning and brief short-term memory tasks suggested difficulty understanding and remember "both one-step and complex" instructions. *Id.* at 602. The ALJ found Dr. Wagner's opinion was "greatly restrict[ed]"

by his use of non-vocationally defined terms—including "may impact," "suggestive," "difficulty," and more—and a lack of vocationally defined function-by-function limitations. (Doc. #7-10, *PageID* #1511). The ALJ ultimately found the opinion persuasive "to the extent that it generally finds limitations, albeit not more than moderate, in these areas." *Id.* The ALJ further found that "mental health records, again, do not reflect debilitating impairment, including noting orientation, cooperative, pleasantness, good attention, ability to stay on track, euthymic mood, average intelligence, and logical/linear though process." *Id.* The ALJ noted that more recent records have some individual of significant anxiety, but states that "records, again indicate that despite this anxiety, he was cooperative, polite, orientated, displayed intact memory, normal concentration, good insight/judgment, and organized/linear thought process." *Id.*

Plaintiff notes that treating psychiatrist Janell Ison, D.O., found issues with high anxiety and poor concentration. (Doc. #9, *PageID* # 3095) (citing Doc. #7-9, *PageID* #s 1444, 2222, 2225). When seen by Rebecca Ekstrand, D.O., on September 30, 2024, for medication check/follow-up, she reported that Plaintiff was "still obviously anxious" and displayed psychomotor agitation consistent with anxiety. (Doc. #7–15, *PageID* # 2143). He could not relax in his seat and he displayed rapid speech. *Id.*

Ultimately, the ALJ concluded that the record was "suggestive of normal concentration and ability to perform simple instructions." (Doc. #7–10, *PageID* # 1512). The ALJ noted that the RFC includes numerous restrictions to limit anxiety, including restricting interactions with others, no production pace work, and limited changes in a routine work setting, limitations consistent with

the objective finding of record as well as continuing activities, which include the: ability to take public transportation and shop in stores. *Id.*

In formulating Plaintiff's RFC, the ALJ considered all of the above opinions, as well as a number of others. *Id.* at 1015–12. One such opinion was that of the psychological consultants, who met with Plaintiff in December 2020, noted fast/pressured speech and anxiety but also reported that Plaintiff had the ability to track the conversation, had a cooperative attitude, and maintained consistent eye contact. *Id.* at 1509. The ALJ observed that physical examinations during this period also noted pleasant and cooperate attitudes, and mental health records "do not reflect debilitating impairment, including noting orientation, cooperative, pleasantness, good attention, ability to stay on track, euthymic mood, average intelligence, and logical/linear though process." *Id.* The ALJ, again, noted recent significant anxiety but reinforced that this reported anxiety did not appear to impact mood, attitude, concentration, judgment, or thought process." *Id.* The ALJ concluded by stating that he, "however, included additional limitations in the [RFC], including regarding production pace work in consideration of more recent evidence of record." *Id.*

Accordingly, there is enough evidence in the record for a reasonable mind to find support for the ALJ's determination. *Id.* Again, the ALJ appropriately considered the supportability and consistency of the medical opinions and adequately "buil[t] an accurate and logical bridge between the evidence and the result[,]" *Fleischer*, 774 F. Supp.2d at 877, such that the undersigned can adequately trace his reasoning. Accordingly, Plaintiff's assignment of error is not well taken.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #9) is **OVERRULED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

September 30, 2026

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge